IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUNGER FREE AMERICA, INC.,<br>   50 Broad Street, Suite 1504,<br>   New York, NY 10004,<br><br>    *Plaintiff*,<br><br>     v.<br><br>BROOKE L. ROLLINS, in her official capacity as Secretary of Agriculture,<br>   1400 Independence Ave. SW<br>   Washington, DC 20250,<br><br>U.S. DEPARTMENT OF AGRICULTURE,<br>   1400 Independence Ave. SW<br>   Washington, DC 20250,<br><br>JAMES C. MILLER, in his official capacity as Administrator for Food and Nutrition Service,<br>   1320 Braddock Place<br>   Alexandria, VA 22314,<br><br>and<br><br>FOOD AND NUTRITION SERVICE,<br>   1320 Braddock Place<br>   Alexandria, VA 22314,<br><br>    *Defendants*. | Case No. 25-cv-1815 |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

    1.    For more than 30 years, Congress has required the United States Department of Agriculture (USDA) to contract with a nongovernmental organization to establish and maintain an "information clearinghouse" of food assistance resources. 42 U.S.C. § 1769g. In recent years, this

clearinghouse has included a phone hotline, an automated texting service, and an online database of food assistance resources. *Id*.

2. Plaintiff Hunger Free America has held the contract for establishing and maintaining the clearinghouse since 2014, helping more than 228,735 callers to locate and use privately operated food pantries, food banks, and soup kitchens, as well as government programs such as the Supplemental Nutrition Assistance Program (SNAP, formerly known as food stamps), the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC), and the Summer Food Service Program.

3. In May 2025, without providing any explanation and with only eight hours' advance warning, USDA allowed the clearinghouse contract to lapse. Since then, USDA has taken no action to fulfill its statutory obligation to maintain the clearinghouse as a resource for the public.

4. USDA's action terminating the clearinghouse as a government-funded resource is contrary to law and arbitrary and capricious.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331.

6. Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A) because Defendants are officers and agencies of the United States and at least one Defendant resides in this district.

## PARTIES

7. Plaintiff Hunger Free America is a nonpartisan 510(c)(3) nonprofit organization that works to end hunger in America and to ensure that all Americans have sufficient access to nutritious food. Hunger Free America conducts research on food benefits programs and issues facing low-income Americans, proposes concrete policy solutions, and engages with media and elected officials to improve access to nutrition for all Americans. Hunger Free America is also a direct services provider, engaging in activities including sponsoring a team of AmeriCorps national

service participants who work to expand the capacity of food pantries, soup kitchens, food banks, and child nutrition programs; recruiting volunteers to provide skilled assistance with projects such as data collection, accounting, research, and communications to support partner faith-based and community organizations nationwide in the fight against hunger; helping low-income Americans access private and public sources of food; and training SNAP recipients for jobs in the social services field.

8.      Until May 20, 2025, Hunger Free America, operating under a contract with USDA, maintained and operated the food assistance resources information clearinghouse.

9.      Defendant Brooke L. Rollins is the Secretary of Agriculture and is sued in her official capacity.

10.     Defendant U.S. Department of Agriculture is an agency of the United States.

11.     Defendant James C. Miller is the Administrator for Food and Nutrition Service and is sued in his official capacity.

12.     Defendant Food and Nutrition Service is an agency within the United States Department of Agriculture.

## FACTUAL BACKGROUND

13.     As part of the Healthy Meals for Healthy Americans Act of 1994, Congress amended the Richard B. Russell National School Lunch Act, 42 U.S.C. § 1751 *et seq.*, to provide that the Secretary of Agriculture "shall enter into a contract with a nongovernmental organization" to "establish and maintain a clearinghouse to provide information to nongovernmental groups located throughout the United States that assist low-income individuals or communities regarding food assistance, self-help activities to aid individuals in becoming self-reliant, and other activities that empower low-income individuals or communities to improve the lives of low-income individuals and reduce reliance on Federal, State, or local governmental agencies for food or other

assistance." Pub. L. No. 103-448 § 123, 108 Stat. 4699, 4731 (1994), *codified at* 42 U.S.C. § 1769g.

14. Congress specified in the 1994 Act that the nongovernmental organization "shall be selected on a competitive basis," subject to six enumerated criteria: that the organization (1) "be experienced in the gathering of first-hand information in all the States through onsite visits to grassroots organizations in each State that fight hunger and poverty or that assist individuals in becoming self-reliant;" (2) "be experienced in the establishment of a clearinghouse similar to the clearinghouse" that it would have to establish and maintain under the contract; (3) "agree to contribute in-kind resources toward the establishment and maintenance of the clearinghouse and agree to provide clearinghouse information, free of charge, to the Secretary, States, counties, cities, antihunger groups, and grassroots organizations that assist individuals in becoming self-sufficient and self-reliant;" (4) "be sponsored by an organization, or be an organization, that—(A) has helped combat hunger for at least 10 years; (B) is committed to reinvesting in the United States; and (C) is knowledgeable concerning Federal nutrition programs;" (5) "be experienced in communicating the purpose of the clearinghouse through the media, including the radio and print media, and be able to provide access to the clearinghouse information through computer or telecommunications technology, as well as through the mails;" and (6) "be able to provide examples, advice, and guidance to States, counties, cities, communities, antihunger groups, and local organizations regarding means of assisting individuals and communities to reduce reliance on government programs, reduce hunger, improve nutrition, and otherwise assist low-income individuals and communities become more self-sufficient." 42 U.S.C. § 1769g(b).

15. Congress appropriated funds for "the Secretary to provide to the organization selected under this section, to establish and maintain the information clearinghouse," in the amount of "$250,000 for each of fiscal years 2010 through 2025." *Id.* § 1769g(d).

16. Defendant Food and Nutrition Service (FNS) manages the contract on behalf of Defendant USDA.

17. USDA first awarded Hunger Free America the clearinghouse contract in 2014. Hunger Free America successfully bid on the clearinghouse contract again in 2017, 2019 and 2024. On information and belief, Hunger Free America was the only bidder for the 2024 contract.

18. Under its contract with USDA, Hunger Free America has created a nationwide database of public and private food assistance resources—including community based food pantries and soup kitchens—(the Database), with more than 40,000 listings searchable by address, which it makes freely available to the public.[1] It also maintains the National Hunger Hotline (the Hotline), a toll-free hotline to connect callers with emergency food providers in their community, as well as an automated texting service available twenty-four hours a day (the Texting Service).

19. The Performance Work Statement for the 2024 contract requires the contractor to operate and maintain the Hotline with live phone coverage Monday through Friday for twelve hours a day, 8:00 a.m.–8:00 p.m. Eastern Time, with the capacity to respond to at least 20,000 calls annually. The Statement also requires the contractor to operate the Texting Service, to keep the Database up to date, to promote awareness of the clearinghouse services through traditional and digital media, and to provide monthly and annual reports.

20. The contract specifies that the Hotline, the Texting Service, and the Database are property of the federal government, and requires the contractor to "provide all programming code,

---

[1] *See* https://findfood.hungerfreeamerica.org/.

the database itself, and instructions such that the government or its chosen contractor can assume responsibility of the database onsite at FNS headquarters or somewhere similar without further assistance from the contractor."

21. In the eleven years that Hunger Free America has held the clearinghouse contract, it has never received a performance evaluation below "satisfactory," including for the 2024–2025 rating period.

22. The 2024 contract provides that "[t]he period of performance shall be for a one-year Base Period. The Government also has the unilateral option to extend the period of performance for 4 Option Years. Each Option Year is 12 months." The 2019 contract was structured in the same way.

23. The "one-year Base Period" for the 2024 contract ran from May 21, 2024, through May 20, 2025. In April 2025 alone, Hunger Free America answered 1,536 Hotline calls to the clearinghouse phone line and 916 text messages from food-insecure Americans and community-based providers.

24. On May 7, 2025, having not received confirmation that FNS intended either to exercise its option to extend the contract past May 20 or to reopen the clearinghouse contract for fresh bidding, Hunger Free America wrote to FNS to remind it that federal law requires USDA to award the clearinghouse contract every year. An FNS contracting officer responded that "it is the Government who determines agency need to go along with that particular law."

25. At 4:00 p.m. on May 20, 2025, eight hours before the contract was due to expire if not extended, an FNS contracting officer emailed Hunger Free America, stating that "[a]t the present time, the contract will expire today. Unfortunately, once the contract expires, terms and conditions will cease and not continue, therefore, the award will end."

26.     On May 30, 2025, USDA took down its webpage for the Hotline,[2] and took down references to the Hotline on at least two other USDA webpages.

27.     Since May 20, 2025, USDA has taken no public steps to enable any other provider to maintain the clearinghouse services.

28.     Hunger Free America has been able to maintain the Hotline using private funds since May 21, 2025. If USDA funding is not restored Hunger Free America will have to either shut down the Hotline and lay off or reassign the staff that maintain the Hotline, or divert resources from other activities to keep the Hotline in operation.

## COUNT I
### (APA – Contrary to Law – School Lunch Act)

29.     The APA directs courts to hold unlawful and set aside agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A).

30.     The Richard B. Russell School Lunch Act requires USDA to contract with a nongovernmental organization to establish and maintain the clearinghouse services and requires USDA to spend a specified amount on those services.

31.     Defendants acted contrarily to law by allowing the clearinghouse services contract to expire and declining to issue a new contract as required by statute. Defendants have no authority to violate the School Lunch Act based on a policy disagreement with Congress's directives.

## COUNT II
### (APA – Contrary to Law – The Impoundment Control Act)

32.     The Administrative Procedure Act (APA) directs courts to hold unlawful and set aside agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A).

---

[2] *Compare* https://www.fns.usda.gov/national-hunger-hotline (last accessed June 10, 2025) *with* https://web.archive.org/web/20250523095525/https://www.fns.usda.gov/national-hunger-hotline (Internet Archive image of USDA National Hunger Hotline webpage as of May 23, 2025).

33. The Impoundment Control Act requires the executive to make appropriated funds "available for obligation" unless the President sends a special message to Congress detailing a request to rescind or reserve funds and Congress then passes a recission bill rescinding the funding. 2 U.S.C. § 683.

34. The President has not sent a special message to Congress requesting that the funds appropriated for the clearinghouse services be rescinded, and Congress has not rescinded that appropriation.

35. The Impoundment Control Act also requires the President to send a special message to Congress whenever the executive proposes to defer spending appropriated funds, and it prohibits deferral of any budget authority except to provide for contingencies, to achieve savings made possible by changed requirements or greater efficiency, or as otherwise specifically provided by law. *Id.* § 684.

36. The President has not sent a special message to Congress requesting deferral of the budget authority for the clearinghouse services, and none of the statutory circumstances that would permit such a deferral is applicable.

37. Defendants' decision to allow the clearinghouse services contract to expire and not to issue a new contract, despite the congressional appropriation to support the contract, is contrary to the Impoundment Control Act, and in violation of the APA.

## COUNT III
### (APA – Arbitrary and Capricious)

38. The APA directs courts to hold unlawful and set aside agency actions that are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

39. Defendants offered no reasoned explanation for allowing the clearinghouse services contract to expire without replacement. Defendants pursued an unreasonable and unlawful goal of entirely terminating a congressionally mandated program.

40. Defendants likewise failed to account for the reliance interests of Hunger Free America in the successful provision of the clearinghouse services and the reliance interests of the thousands of people who benefit from the clearinghouse.

41. Defendants acted arbitrarily and capriciously by terminating, without warning or justification, the clearinghouse services program.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a. Declare that Defendants' termination of funding for the statutorily mandated clearinghouse services program is arbitrary, capricious, and contrary to law;

b. Order Defendants promptly to enter into a contract with a nongovernmental organization to establish and maintain the clearinghouse services;

c. Award Plaintiffs their costs and attorneys' fees for this action; and

d. Grant any other relief as this Court deems appropriate.

Dated: June 24, 2025					Respectfully submitted,

						/s/ Cormac A. Early
						Cormac A. Early (DC Bar No. 1033835)
						Allison M. Zieve (DC Bar No. 424786)
						Adina H. Rosenbaum (DC Bar No. 490928)
						Public Citizen Litigation Group
						1600 20th Street NW
						Washington, DC 20009
						(202) 588-1000

						*Attorneys for Plaintiffs*