UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUNGER FREE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> BROOKE L. ROLLINS, in her official capacity as Secretary of Agriculture, et al., <br><br> Defendants. | Civil Action No. 25-1815 (JEB) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

BACKGROUND .............................................................................................................................. 1

Standard Of Review ....................................................................................................................... 2

Argument ........................................................................................................................................ 3

    I.      Plaintiff Has Not Shown A Likelihood of Success on the Merits. ......................... 3

    II.     Plaintiff Has Failed to Demonstrate It Will Suffer Irreparable Harm. ................... 8

    III.    The Balance of Equities and the Public Interest Factor Weigh Against Issuing an Injunction. .............................................................................................................. 11

    IV.    The Court Should Order Plaintiff to Post Bond Pursuant to Rule 65(c). ............... 12

CONCLUSION ............................................................................................................................. 12

## **TABLE OF AUTHORITIES**

Cases                                                                                                                           Page(s)

*Acetris Health, LLC v. United States*,
   949 F.3d 719 (Fed. Cir. 2020) ............................................................................................... 7, 8

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ................................................................................................ 2, 8

*CityFed Fin. Corp. v. Off. of Thrift Superv.*,
   58 F.3d 738 (D.C. Cir. 1995) ...................................................................................................... 8

*Wisc. Gas Co. v., Fed. Energy Regul. Comm'n*,
   758 F.2d 669 (D.C. Cir. 1985) .................................................................................................... 8

*Damus v. Nielsen*,
   Civ. A. No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) ...................................... 2

*Davis v. Pension Benefit Guaranty Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) .................................................................................................. 2

*Dorfmann v. Boozer*,
   414 F.2d 1168 (D.C. Cir. 1969) .................................................................................................. 3

*DSE, Inc. v. United States*,
   169 F.3d 21 (D.C. Cir. 1999) .................................................................................................... 12

*Farris v. Rice*,
   453 F. Supp. 2d 76 (D.D.C. 2006) ............................................................................................ 10

*Fisher-Cal Indus., Inc. v. United States*,
   747 F.3d 899 (D.C. Cir. 2014) .................................................................................................... 7

*Henke v. Dep't of Interior*,
   842 F. Supp. 2d 54 (D.D.C. 2012) .............................................................................................. 8

*Hospitality Staffing Sols., LLC v. Reyes*,
   736 F. Supp. 2d 192 (D.D.C. 2010) ............................................................................................ 2

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ..................................................................................................... 2, 3

*Mdewakanton Sioux Indians of Minn. v. Zinke*,
   255 F. Supp. 3d 48 (D.D.C. 2017) .............................................................................................. 8

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................................... 2, 11

*Padgett v. Vilsack*,
    Civ. A. No. 24-2954 (CRC), 2024 U.S. Dist. LEXIS 236469 (D.D.C. Nov. 8, 2024) ............... 9

*Pursuing Am.'s Greatness v. FEC*,
    831 F.3d 500 (D.C. Cir. 2016) ............................................................................................ 2

*Safari Club Int'l v. Salazar*,
    852 F. Supp. 2d 102 (D.D.C. 2012) .................................................................................... 9

*Sampson v. Murray*,
    415 U.S. 61 (1974) ....................................................................................................... 8, 11

*Serono Labs, Inc. v. Shalala*,
    158 F.3d 1313 (D.C. Cir. 1998) ....................................................................................... 11

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) ............................................................................................ 2

*Spadone v. McHugh*,
    842 F. Supp. 2d 295 (D.D.C. 2012) .................................................................................. 10

*Sys. Advisors, Inc. v. United States*,
    847 F.2d 811 (Fed. Cir. 1988) ............................................................................................ 9

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ............................................................................................................ 3

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ......................................................................................................... 11

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) ................................................................................................................ 2

Statutes

28 U.S.C. § 1491(b) ...................................................................................................................... 7
42 U.S.C. § 1769g ................................................................................................................... 4, 6

Rules

Federal Rule of Civil Procedure 65(c) ....................................................................................... 12

Defendants Brooke L. Rollins, in her official capacity as Secretary of Agriculture, the United States Department of Agriculture, James C. Miller, in his official capacity as Administrator for Food and Nutrition Service, and the Food and Nutrition Service, respectfully file this opposition to Plaintiff Hunger Free America, Inc.'s motion for preliminary injunction (ECF No. 6, "Pl.'s Mot."). For the reasons discussed below and in the Chase Lucas Declaration, the Court should deny Plaintiff's motion.

## BACKGROUND

Plaintiff is a non-profit organization "that works to end hunger in America and to ensure that all Americans have sufficient access to nutritious food." ECF No. 8, Am. Compl. ¶ 7. Since 2014, Plaintiff held a contract with the Food and Nutrition Service ("FNS") to maintain a clearinghouse to provide information assisting low-income individuals or communities with food assistance. *Id.* ¶ 17. Plaintiff's contract ended on May 20, 2025. *Id.* ¶ 8. Unhappy with Defendants' decision to re-open the bidding process, Plaintiff moved for emergency relief under the Administrative Procedure Act ("APA") asking the Court to "issue a preliminary injunction requiring [the United States Department of Agriculture ("USDA")] to enter into a contract with a nongovernmental organization to establish and maintain an information clearinghouse services [sic] as required by the School Lunch Act." Pl.'s Mot. at 26. Defendants, however, have already begun the process of entering a new contract, and because there is no further relief that Plaintiff seeks, this motion is moot (or at a minimum, well on its way to being moot).

To begin, Plaintiff fails to establish a likelihood of success on the merits of its claims because Defendants have begun the process of entering into a new contract. To the extent Plaintiff has concerns with the bidding process, those claims would properly be brought in the Court of Federal Claims. Second, Plaintiff fails to establish irreparable harm absent the temporary relief it seeks. Plaintiff complains of self-inflicted harm and monetary damages that cannot constitute

irreparable harm. Finally, the balance of equities and the public interest favor Defendants, as Plaintiff is unlikely to succeed on the merits and it is in the public interest to allow Defendants to take the time necessary to fulfill their statutory duties by carefully and properly undertaking the contracting process. The Court accordingly should deny the motion.

## STANDARD OF REVIEW

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The moving party bears the burden of persuasion and must demonstrate "by a clear showing" that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Benefit Guaranty Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)). The D.C. Circuit has hinted, though not held, that *Winter*—which overturned the Ninth Circuit's "possibility of irreparable harm" standard—establishes that "likelihood of irreparable harm" and "likelihood of success" are "independent, free-standing requirement[s]." *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011); *see also League of Women Voters*,

838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after *Winter*). Notably, in recent arguments before the Supreme Court, justices have expressed the same view. *See* Arg. Tr. at 9, *Lackey v. Stinnie*, No. 23-621 (U.S. argued Oct. 8, 2024), available at: https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/23-621_q8l1.pdf (Sotomayor, J.: "under *Winter*, we have recently said that there has to be a finding of a likelihood of success on the merits"); *id.* at 63 (Barrett, J.: "you can't disregard the merits under *Winter*").

Because preliminary injunctive relief is not intended to provide a plaintiff with a means to bypass the litigation process and prevail in one fell swoop, "a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.").

**ARGUMENT**

I.      **Plaintiff Has Not Shown A Likelihood of Success on the Merits.**

Plaintiff argues that under the APA, Defendants acted contrarily to the School Lunch Act and the Impoundment Control Act "by allowing the clearinghouse services contract to expire and declining to issue a new contract as required by statute." Am. Compl. ¶ 31; *see id.* 37. Plaintiff further argues that Defendants acted arbitrarily and capriciously by "terminating, without warning or justification, the clearinghouse services program." *Id.* ¶ 41. The relief Plaintiff seeks is the exact relief Plaintiff asks the Court for in its motion for a preliminary injunction—to "[o]rder Defendants promptly to enter into a contract with a nongovernmental organization to establish and maintain the clearinghouse services." *Id.* at 9.

Pursuant to the Healthy Meals for Healthy Americans Act of 1994 and the Richard B. Russell National School Lunch Act, the Secretary of Agriculture "shall enter into a contract with

3

a nongovernmental organization" to "establish and maintain a clearinghouse to provide information to nongovernmental groups located throughout the United States that assist low-income individuals or communities regarding food assistance, self-help activities to aid individuals in becoming self-reliant, and other activities that empower low-income individuals or communities to improve the lives of low-income individuals and reduce reliance on Federal, State, or local governmental agencies for food or other assistance." 42 U.S.C. § 1769g(a). The organization:

> shall be selected on a competitive basis and shall–(1) be experienced in the gathering of first-hand information in all the States through onsite visits to grassroots organizations in each State that fight hunger and poverty or that assist individuals in becoming self-reliant; (2) be experienced in the establishment of a clearinghouse similar to the clearinghouse described in subsection (a); (3) agree to contribute in-kind resources toward the establishment and maintenance of the clearinghouse and agree to provide clearinghouse information, free of charge, to the Secretary, States, counties, cities, antihunger groups, and grassroots organizations that assist individuals in becoming self-sufficient and self-reliant; (4) be sponsored by an organization, or be an organization, that—(A) has helped combat hunger for at least 10 years; (B) is committed to reinvesting in the United States; and (C) is knowledgeable concerning Federal nutrition programs; (5) be experienced in communicating the purpose of the clearinghouse through the media, including the radio and print media, and be able to provide access to the clearinghouse information through computer or telecommunications technology, as well as through the mails; and (6) be able to provide examples, advice, and guidance to States, counties, cities, communities, antihunger groups, and local organizations regarding means of assisting individuals and communities to reduce reliance on government programs, reduce hunger, improve nutrition, and otherwise assist low-income individuals and communities become more self-sufficient.

*Id.* § 1769g(b). From the years 2010 through 2025, the amount provided annually to the selectee is $250,000. *Id.* § 1769g(d). The statute contains no language that the contract must be continuous, that it must never lapse, or that the Agency cannot solicit new bids as it sees fit.

Here, Plaintiff is unlikely to succeed on the merits of its claims. Plaintiff's claims hinge on speculation that Defendants are "violat[ing] the School Lunch Act based on a policy disagreement with Congress's directives" and "pursued an unreasonable and unlawful goal of entirely terminating a congressionally mandated program." Am. Compl. ¶¶ 31, 39. But as evidenced by the

4

Chase Lucas declaration ("Lucas Decl."), that is simply not the case. FNS has begun the process of resoliciting the award for National Hunger Hotline support services. Lucas Decl. ¶ 7. On June 24, 2025, FNS posted a Sources Sought Notice ("Notice") on SAM.gov for USDA National Hunger Hotline support services. *See id.* ¶ 8; *see also* https://sam.gov/opp/ea405bff41ac47328615ea81dcf467bf/view. A Sources Sought Notice is a synopsis pursuant to Federal Acquisition Regulation Subpart 5.2 that is posted by a Government agency to solicit information from businesses (typically small businesses) that may be capable of fulfilling a specific contract requirement. Lucas Decl. ¶ 9. It is not a formal solicitation like a Request for Quote or Request for Proposal, but serves as a preliminary step in the acquisition process. *Id.* The primary purpose of a Sources Sought Notice is three-fold. For one, the Notice is a way to conduct market research to determine if there are two or more capable businesses, particularly small businesses, that can meet the requirements of a planned contract. Lucas Decl. ¶ 10(a). Second, by publicizing the Notice, the Government aims to increase competition and provide more opportunities for small businesses to participate in Federal contracting. *Id.* ¶ 10(b). Third, the Notice helps develop an acquisition strategy based on market capabilities. *Id.* ¶ 10(c). For example, the results may assist a Contracting Officer in deciding if the requirement should be competed as a small business set-aside or full and open competition. *Id.* In this instance, the Notice seeks "to determine the availability and capability of small businesses" to support the National Hunger Hotline and Clearinghouse. *Id.* ¶ 11.

By its own terms, the Notice is "Government market research" that will facilitate acquisition strategy development, allowing the Contracting Officer to better understand the availability and capability of small businesses to perform the work and to determine how to proceed with an acquisition determination. *Id.* If there are two or more capable small businesses

who have demonstrated the capability to be able to complete the Government requirement need(s), then a Contracting Officer may decide to set the procurement aside for only small businesses based on the results of the Notice. *Id.* If the market research resulted in no valid and vetted responses, then the Contracting Officer may determine to compete the requirement as a 100% full and open competition, meaning any large or small business can quote/propose on the solicitation when posted. *Id.* The market research assists the Government with actual information obtained from the inquiry to do what is in the best interest of the Government to obtain the best capable vendor while anticipating receiving the best value for the Government. *Id.*

The Notice has a response date of July 14, 2025, at 10:00 AM EDT. *Id.* ¶ 12. After the Notice closes, the next steps in the procurement process are to develop the acquisition strategy and prepare the solicitation. *Id.* ¶ 13. A solicitation would be posted to either Sam.gov or GSA e-buy, depending on the acquisition strategy that is developed based on the information collected from the Notice. *Id.* The solicitation is typically active for 16 business days, but that length of time can be expanded if a potential bidder has questions or concerns about the solicitation and FNS revises the solicitation. *Id.* ¶ 14. Additionally, bid protests can delay execution of an award. *Id.* For those reasons, FNS cannot commit to a specific time frame for completion of the process. *Id.* However, at this time, and as evidenced by the Notice, FNS has begun the process of resoliciting the award for National Hunger Hotline support services and is dedicated to fulfilling its statutory obligations. *Id.* A final award would be consistent with the requirements in Section 26 of the Richard B. Russell National School Lunch Act (42 U.S.C. § 1769g), including the requirements for a qualifying nongovernmental organization. *Id.* ¶ 15.

Plaintiff argues that Defendants "indicated to [Plaintiff] that it does not view itself as bound to comply with the School Lunch Act." Pl.'s Mot. at 17, 19. Defendants have done no such thing,

6

and it appears that Plaintiff's assertion comes from its creative misreading of an email it received from a contracting officer for Defendants. On May 7, 2025, Plaintiff emailed the Department of Agriculture seeking the status of the contract it held. *See id.* at Ex. A. Plaintiff "reminded [Defendants] that federal law requires [them] to award the clearinghouse contract every year." *See id.* at Berg. Decl. ¶ 24. A contracting officer for Defendants responded that her "management is fully aware of this information, as well as you know, it is the Government who determines agency need to go along with that particular law." *Id.* at Ex A. It seems Plaintiff declined to give Defendants the benefit of the doubt; instead, Plaintiff read that email to say Defendants do not view themselves as bound by the law, as opposed to Defendants explaining that is it the Agency who determines what is needed (*i.e.*, the requirements of the contract, terms and conditions of the contract, performance of the contract, etc.) to satisfy the statutory requirement.

Finally, to the extent Plaintiff has concerns with the way Defendants are endeavoring to procure the contract, such a complaint would not properly be before this Court. Pursuant to 28 U.S.C. § 1491(b), only the Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *See Fisher-Cal Indus., Inc. v. United States*, 747 F.3d 899, 901 (D.C. Cir. 2014) ("There is no dispute . . . that the Tucker Act confers exclusive jurisdiction on the Court of Federal Claims for suits alleging a procurement violation."). The statute is sweeping in scope, and the term "procurement" "includes all stages of the process of acquiring property." *Acetris Health, LLC v. United States*, 949 F.3d 719, 727 (Fed. Cir. 2020). Likewise, "proposed procurement" broadly encompasses all

7

contemplated future procurements by the agency. *Id.* Accordingly, any issues Plaintiff has in connection with Defendants' proposed procurement properly lies outside the Court's jurisdiction.

## II.   **Plaintiff Has Failed to Demonstrate It Will Suffer Irreparable Harm.**

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Superv.*, 58 F.3d 738, 747 (D.C. Cir. 1995). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quoting *CityFed Fin.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

"Although the concept of irreparable harm does not readily lend itself to definition, the courts have developed several well known and indisputable principles to guide them in the determination of whether this requirement has been met." *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985). "[T]he injury must be both certain and great; it must be actual and not theoretical." *Id*. It is a "well known and indisputable principle[]" that an "unsubstantiated and speculative" harm cannot constitute "irreparable harm" sufficient to justify injunctive relief. *Wis. Gas*, 758 F.2d at 674.

Here, Plaintiff has not demonstrated irreparable harm sufficient to warrant extraordinary and emergency injunctive relief. Plaintiff argues that "vindication at the end of this litigation cannot undo the damage that [Plaintiff] will suffer, and is already suffering, in the absence of an injunction." Pl.'s Mot. at 23. Plaintiff argues that Defendant's "decision to terminate funding for the clearinghouse services makes it substantially more difficult for [Plaintiff] to carry out its primary mission of fighting domestic hunger and ensuring that all Americans have access to nutritious food" because Plaintiff "has already had to divert resources away from its data department, and from its research efforts that inform policymaking at all levels, to keep the clearinghouse services running temporarily." *Id.* at 23-24. Such alleged harms are self-inflicted. Defendants did not ask Plaintiff to continue running the clearinghouse services. Of course, government contractors are not entitled to exercise of an option of a contract, and Plaintiff is (or should be) aware of this and could have planned for the possibility that their contract would cease. *See Gov. Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 813 (Fed. Cir. 1988). The contract between Plaintiff and Defendants properly ended, and at that point Plaintiff was relieved of any obligation to continue running the clearinghouse services. That Plaintiff has decided to continue to do so does cannot mean that Defendants have inflicted upon it harm, let alone irreparable harm. "It is well-settled that a preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted." *Padgett v. Vilsack*, Civ. A. No. 24-2954 (CRC), 2024 U.S. Dist. LEXIS 236469, at *8 (D.D.C. Nov. 8, 2024) (quoting *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C. 2012)). Plaintiff's harm here is wholly self-inflicted.

And even if its harms were not self-inflicted, distilled to their core, Plaintiff's alleged harms are grounded on monetary damages due to its own choice to continue running the clearinghouse at its own expense while the government undergoes the process of entering a new contract. *See*

9

Pl.'s Mot, Berg Decl. ¶¶ 30-31 ("Since May 21, 2025, HFA has maintained the Hotline, texting service, "find food" website function, and database using funds raised from private sources, and by diverting funds from HFA's Data Department. HFA is working diligently to raise private funds to allow the Clearinghouse services to continue, at least temporarily, but that effort is hampered by uncertainty over whether public funding for the Clearinghouse will be restored (whether through HFA or another contractor). Diverting funds from HFA's Data Department to keep the Hotline running has harmed HFA's ability to update the Clearinghouse data and to aid other key HFA functions such as our work directly helping eligible Americans access SNAP, WIC, and summer meals for children. Continuing to divert funds from the Data Department would also greatly diminish our ability to conduct research that is relied upon heavily by federal, state, and local policy makers and civil society."). However, "[m]onetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) (citations omitted). Mere injuries, however substantial, in terms of money, time, and energy that are or will be expended in the absence of a stay, are not enough. *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006).

What Plaintiff really complains of in this matter are injuries that may be sufficient to confer standing but not irreparable harm. "While standing and irreparable harm overlap, they are far from the same." *Santos v. McDonough*, Civ. A. No. 24-1759 (JDB), ECF No. 38, slip op. at 12 (D.D.C. Feb. 26, 2025). Indeed, "irreparable harm is a higher bar to clear than standing" and requires a concrete, particularized harm "that is sufficiently serious and irremediable so as to warrant the extraordinary relief of a court's intervention in a case before factual and legal development." *Id.* In this case, where the government has begun the process of doing exactly what Plaintiff wants,

the Court should find that Plaintiff has not satisfied the high irreparable harm bar and deny the preliminary injunction motion in its entirety.

### III. The Balance of Equities and the Public Interest Factor Weigh Against Issuing an Injunction.

The party seeking a preliminary injunction must show that the balance of equities tips in its favor and that the injunction is in the public interest. *Winter*, 555 U.S. at 20. As noted above, these two factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. When evaluating these last two factors, the Court "'should pay particular regard for the public consequences'" of injunctive relief. *Id.* at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Where, as here, Plaintiff has failed to show that it is likely to succeed on the merits or to offer requisite evidence of irreparable harm, the public interest factor weighs against the issuance of a preliminary injunction. *See Serono Labs, Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998) ("The final preliminary injunction factor, the public interest, also offers [plaintiff] no support because it is inextricably linked with the merits of the case. If, as we have held, [plaintiff] is not likely to establish [a likelihood of success on the merits], the public interest considerations weigh against an injunction.").

Additionally, the Supreme Court has stressed the importance of granting the government "the widest possible latitude in the dispatch of its own affairs." *Sampson*, 415 U.S. at 83. Granting Plaintiff's request for injunctive relief necessarily would mean that the Court would oversee a contract process that Defendants have shown they are perfectly capable of undertaking on their own. Thus, the Court should conclude that the public interest is not best served by granting Plaintiff's requests. The Court should thus find that on balance, this factor weighs in favor of Defendants.

### IV. The Court Should Order Plaintiff to Post Bond Pursuant to Rule 65(c).

For the reasons stated above, Defendants submit that the Court can and should deny Plaintiff's motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Plaintiff to post security. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Plaintiff to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion.

Dated: July 2, 2025
      Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     */s/ Kaitlin K. Eckrote*
KAITLIN K. ECKROTE
D.C. Bar #1670899
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2485

*Attorneys for the United States of America*